[No. E039601. Fourth Dist., Div. Two. Oct. 17, 2006.]

In re REBECCA R., a Person Coming Under the Juvenile Court Law.
SAN BERNARDINO COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Plaintiff and Respondent, v.
SHAWN R., Defendant and Appellant.

**COUNSEL**

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Dennis E. Wagner, Interim County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

Michael D. Randall, under appointment by the Court of Appeal, for Minor.

**OPINION**

GAUT, J.—

### 1. Introduction

Defendant and appellant Shawn R. (father) is the natural father of Rebecca R. Father's parental rights were terminated. He appeals, with the sole claim that the juvenile court failed to "ensure" that the San Bernardino County Department of Children's Services (DCS) inquire of him whether he had any Indian ancestry for purposes of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA). We affirm.

### 2. Factual and Procedural History

Rebecca was detained in 2003. Her mother, Stephanie L., was arrested for drug use and had a history of mental health problems. Father also had drug abuse issues, which prevented him from caring for the child. In over a year of reunification proceedings, father did little or nothing to complete his service plan and demonstrated no interest in the child. The court terminated his parental rights. Father appeals.

### 3. Analysis

#### No Reversal Is Required

Father now argues that the termination order should be set aside because, even though the trial court ordered DCS to inquire of him whether he had any Indian ancestry, there is no documentation in the record to show whether this was in fact done. No reversal is required.

Mother was arrested on December 30, 2003. DCS took emergency custody of Rebecca and filed a dependency petition on January 2, 2004. On the face of the petition, boxes were provided in which to mark whether the child may be a member of or may be eligible for membership in an Indian tribe, or

whether the child may be of Indian ancestry. Neither box was marked. The social worker's report for the detention hearing affirmatively represented that "The Indian Child Welfare Act does not apply." At the detention hearing on January 6, 2004, the court ordered both parents "to reveal membership in [an] Indian tribe." This oral order was also reflected in the court's minutes.

■ Father relies on the current version of California Rules of Court, rule 1439(d),[1] which provides that both the juvenile court and DCS "have an affirmative and continuing duty to inquire whether a [dependent] child . . . is or may be an Indian child." Rule 1439(d)(2) provides that "the social worker must ask . . . the parents . . . whether the child may be an Indian child or may have Indian ancestors." Rule 1439(d)(3) now provides that, "[a]t the first appearance by a parent or guardian in any dependency case . . . the parent . . . must be ordered to complete form JV-130, *Parental Notification of Indian Status*." (Italics added.) Father now complains that no form JV-130 is in the record to show that he was ever asked whether the child might have Indian heritage and that the court never asked him personally on the record whether the child might have any Indian ancestry.

We reject father's claim of error.

■ First, father's complaint is based in part on a provision that was not in force when the dependency began. Rule 1439(d) was amended *effective January 1, 2005*, a year after the parties' first appearance in this case, to provide "an affirmative *and continuing* duty to inquire" into a child's Indian ancestry. (Italics added.) Likewise, no JV-130 form appears in the record, because the provision for such a form did not exist in the court rules at the time this dependency began. There simply was no form JV-130 at that time, a year before the amended rule took effect.

Second, father's reliance on *In re J.N.* (2006) 138 Cal.App.4th 450 [41 Cal.Rptr.3d 494], is misplaced. In that case, the Court of Appeal reversed a termination order for failure to inquire of the mother whether the child had Indian ancestry. *In re J.N.* commenced in 2005, after the provision for JV-130 forms went into effect. There was no such form on file in the record for the mother, although there was for the father. Further, the social worker's reports indicated that the father was asked about Indian ancestry, but did not indicate

---

[1] All further references to rules will be to the California Rules of Court unless otherwise indicated.

that the mother was asked. Although the court's minutes stated that the court had no reason to know of any Indian ancestry for the child, the reporter's transcript reflected no such pronouncement. There were inconsistencies between the oral record and the documentary record, and there were differences between the mother and the father, which could give rise to the inference that no inquiry was ever made of the mother.

That is not our case. There is no inconsistency among the documents here. Both the reporter's transcript and the court's minutes reflect the trial court's order to DCS to inquire whether the child had Indian ancestry. There was no requirement to file a form JV-130. There was a requirement to indicate any knowledge of Indian ancestry on the face of the petition and there was no such indication in the requisite boxes. All the social worker's reports consistently reflect that ICWA did not apply.

In essence, father claims that there was no substantial evidence to show that the duty of inquiry was satisfied. We disagree. We review factual findings in the light most favorable to the trial court's order. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217].) The evidence in the entire record shows that the duty of inquiry was satisfied. DCS did not mark the boxes on the face of the petition, which it was under obligation to do if the child had any indication of Indian heritage. The trial court, at the earliest possible moment, affirmatively ordered DCS to inquire of the parents as to Indian ancestry. There is no inconsistency in the record as to this point, and the reporter's transcript and the court's minutes both reflect this order. The social worker's reports consistently indicated that the ICWA did not apply. There is no reason to think that DCS failed to carry out the court's order, and father has provided none here. (Evid. Code, § 664 [presumption of duty regularly performed].) There are no inconsistencies in the evidence to rebut the presumption that DCS properly carried out its duties in contrast to *In re J.N.*, *supra*, 138 Cal.App.4th 450, where an affirmative showing that inquiry was made as to one parent supported an inference that it had not been made as to the other.

 Third, and finally, we reject father's claim because father has failed to show a miscarriage of justice, which is the fundamental requisite before an appellate court will reverse a trial court's judgment. (Cal. Const., art. VI, § 13.)

In *In re J.N.*, *supra*, 138 Cal.App.4th 450, at page 461, the agency conceded that "the record does not show these rules were complied with, but urges us to find any error harmless since there is nothing in the record to indicate mother has any Indian ancestry." The court, however, "refuse[d] to speculate about what mother's response to any inquiry would be . . . ." (*Ibid.*) The court therefore made a limited reversal and remanded to the trial court to make the inquiry. Father essentially asks the same of us, to overlook his failure to demonstrate a miscarriage of justice. This we decline to do.

The sole reason an appellate court is put into a position of "speculation" on the matter is the parent's failure or refusal to tell us. Father complains that he was not asked below whether the child had any Indian heritage. Fair enough. But, there can be no prejudice unless, *if* he had been asked, father *would have* indicated that the child did (or may) have such ancestry.

Father is here, now, before this court. There is nothing whatever which prevented him, in his briefing or otherwise, from removing any doubt or speculation. He should have made an offer of proof or other affirmative representation that, had he been asked, he would have been able to proffer some Indian connection sufficient to invoke the ICWA. He did not.

In the absence of such a representation, the matter amounts to nothing more than trifling with the courts. (*People v. Beebe* (1989) 216 Cal.App.3d 927, 932 [265 Cal.Rptr. 242].) The knowledge of any Indian connection is a matter wholly within the appealing parent's knowledge and disclosure is a matter entirely within the parent's present control. The ICWA is not a "get out of jail free" card dealt to parents of non-Indian children, allowing them to avoid a termination order by withholding secret knowledge, keeping an extra ace up their sleeves. Parents cannot spring the matter for the first time on appeal without at least showing their hands. Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way.

█ The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis. In the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal.

### 4. <u>Disposition</u>

For the reasons stated, father's claim that the termination order should be reversed is without merit. The order terminating his parental rights is affirmed.

Richli, Acting P. J., and Miller, J., concurred.